INSURANCE RATING BOARD & others *vs.* COMMISSIONER OF INSURANCE.

Suffolk. February 3, 1971. — March 19, 1971.

Present: TAURO, C.J., SPALDING, CUTTER, SPIEGEL, & BRAUCHER, JJ.

*Insurance*, Rating, Commissioner of insurance.

Upon a petition under G. L. c. 175, § 113B, by insurance companies and licensed rating organizations for review of orders of the Commissioner of Insurance fixing 1970 rates for a certain type of automobile insurance based on "the combined experience of all companies doing business" of such type in Massachusetts, it was not incumbent on each petitioner, in order to sustain a claim that the rates were confiscatory, to prove that the rates were confiscatory as applied to itself. [115]

Insurance rates fixed for a particular year by the Commissioner of Insurance under G. L. c. 175, § 113B, on a certain type of insurance would not be adequate, fair and reasonable if a large aggregate loss incurred by insurance companies writing such insurance for the preceding year,

and a probable greater loss incurred by them for the particular year, should be ignored and the preceding year's rates simply renewed. [115]

Investment income received by insurance companies from premiums and reserves related to one type of coverage cannot lawfully be taken into account in fixing rates for another type of coverage. [116]

Upon petitions under G. L. c. 175, § 113B, by insurance companies and licensed rating organizations for review of a decision by the Commissioner of Insurance to "fix and establish" the 1969 rates for automobile property damage liability insurance to a limit of $5000, and for automobile medical payments insurance, as the 1970 rates for such insurance, the findings of the commissioner were not adequate to enable this court to determine whether his decision and conclusions were warranted by appropriate subsidiary findings supported by substantial evidence, and the case was ordered remanded to the commissioner for appropriate subsidiary findings and conclusions and for any further proceedings necessary. [118]

Two PETITIONS filed in the Supreme Judicial Court for the county of Suffolk on January 30, 1970.

The cases were consolidated and reserved and reported by *Kirk, J.*, without decision.

*Herbert P. Wilkins (Acheson H. Callaghan, Jr.*, with him) for the petitioners.

*James P. Kiernan*, Assistant Attorney General (*Walter H. Mayo, III*, Assistant Attorney General, with him) for the respondent.

BRAUCHER, J.  This case is a consolidation of two petitions for review under G. L. c. 175, § 113B, of an order fixing and establishing 1970 rates pursuant to G. L. c. 175, § 113C, for automobile property damage liability insurance and for automobile medical payments insurance.  The petitioners as to property damage liability insurance are two rating organizations licensed under G. L. c. 175A, the Insurance Rating Board (Board) and the Mutual Insurance Rating Bureau (Mutual Bureau), suing on behalf of their members and subscribers, and eighteen insurance companies, each suing on behalf of itself and all other insurance companies affected.  The petitioners as to automobile medical payments insurance are a rating organization licensed under G. L. c. 175A, the Massachusetts Automobile Rating and Accident Prevention Bureau (Massachusetts Bureau), suing on behalf of its members, and sixteen insurance companies,

each suing on behalf of itself and all members of the Massachusetts Bureau. The petitioners and the members and subscribers of the Board and the Mutual Bureau write a substantial majority of the property damage liability insurance written in the Commonwealth; the members of the Massachusetts Bureau write substantially all medical payments insurance written in the Commonwealth. The respondent to both petitions (Commissioner) is the Commissioner of Insurance for the Commonwealth.

In August, 1969, the Board and the Mutual Bureau submitted to the Commissioner proposed 1970 rates for property damage liability insurance, and the Massachusetts Bureau submitted proposed 1970 rates for medical payments insurance. In November, 1969, the Commissioner held a public hearing on these and other rates. By a decision dated January 12, 1970, he disapproved the proposals here in issue and fixed and established for 1970 the rates for property damage liability insurance and for medical payments insurance which were in effect for 1969. Those rates are the same rates as have been in effect since January 1, 1967. The case was reserved and reported by the single justice without decision upon the pleadings and a statement of agreed facts. The transcript of the public hearing and the exhibits introduced at the hearing are incorporated in the statement.

1. Before 1968, the only automobile insurance coverages which insurers were required to afford were the $5,000–$10,000 bodily injury liability coverages, the so called "compulsory coverages" under G. L. c. 90, §§ 34A–34L. Rates for the compulsory coverages were fixed and established by the Commissioner under G. L. c. 175, § 113B. Rates for all other automobile insurance coverages were determined under c. 175A, which provides for filing of rates by the insurers, subject to subsequent disapproval by the Commissioner after hearing. *Insurance Rating Bd.* v. *Commissioner of Ins.* 358 Mass. 171.

Statute 1968, c. 643, § 3, effective October 14, 1968, amended G. L. c. 175, § 113C, to require an insurer issuing

compulsory coverages also to issue, at the insured's option, so called "additional coverage," which includes the coverages in issue in this case: property damage liability insurance to a limit of $5,000, and medical payments insurance. The amendment further provides that the rates for the newly required additional coverages shall be "subject to the approval of the commissioner, under the provisions of . . . [§ 113B]." By § 113B, as amended by St. 1968, c. 643, § 2, the Commissioner "shall, annually on or before September fifteenth, after due hearing and investigation, fix and establish fair and reasonable classifications of risks . . . and adequate, just, reasonable and nondiscriminatory premium charges . . . for the ensuing calendar year or any part thereof." *Insurance Rating Bd.* v. *Commissioner of Ins.* 356 Mass. 184, 191.

On October 14, 1968, the effective date of the 1968 amendment, the Board and the Mutual Bureau made filings with respect to the property damage liability coverage described in the 1968 amendment. The Commissioner approved those filings and they were effective as of October 14, 1968. In November, 1968, the Commissioner reëstablished for 1969 the classifications of risks, premium charges and rules and regulations which were in effect for 1967. He rejected filings by the Board and the Mutual Bureau made December 26, 1968, and in *Insurance Rating Bd.* v. *Commissioner of Ins.* 356 Mass. 184, we held his action justified. He could have acted after September 15, 1968. *Liberty Mut. Ins. Co.* v. *Acting Commr. of Ins.* 265 Mass. 23, 28–29. *Doherty* v. *Commissioner of Ins.* 328 Mass 161, 163. But the 1968 amendment was not enacted in time for the § 113B procedure to be followed, the Board and the Mutual Bureau waited five months after its enactment before the December 26 filing, and the time during which the Commissioner could act was not adequate. *Insurance Rating Bd.* v. *Commissioner of Ins.* 356 Mass. 184, 191–192. Thus the new procedure has been applied to the additional coverages for the first time in the proceeding to fix 1970 rates.

2. The duty of the Commissioner under G. L. c. 175,

§ 113B, has been defined in cases involving the compulsory coverages. *American Employers' Ins. Co.* v. *Commissioner of Ins.* 298 Mass. 161, 166–169. *Massachusetts Bonding & Ins. Co.* v. *Commissioner of Ins.* 329 Mass. 265, 270–272. *American Employers' Ins. Co.* v. *Commissioner of Ins.* 335 Mass. 748, 750–756. See also *Aetna Cas. & Sur. Co.* v. *Commissioner of Ins.* 358 Mass. 272, 279–281; *Travelers Indem. Co.* v. *Commissioner of Ins.* 358 Mass. 387.

The Commissioner contends that to sustain a claim of confiscation each petitioner must prove that the rates are confiscatory as applied to itself and that any petitioner which does not do so should not benefit from the aggregate experience of all the petitioners. But as he says in his opinion in this case, "Rates are made on the basis of the combined experience of all companies doing business here in the Commonwealth." As we have said, "it is not incumbent upon the petitioners to allege that the premium charges will be confiscatory as to any company in order to obtain judicial review of the commissioner's order. Each company is 'aggrieved' within the meaning of § 113B by alleging that a lower schedule of premium charges has resulted from the commissioner's failure to establish them in accordance with the standards prescribed by the statute. See *Brest* v. *Commissioner of Ins.* 270 Mass. 7, 19. Since, as we hold, the petitioners are entitled to a review without alleging confiscation it is unnecessary to discuss the argument of the commissioner based on *Aetna Ins. Co.* v. *Hyde,* 275 U. S. 440. That principle is not applicable here. Compare *Jordan* v. *American Eagle Fire Ins. Co.*" 169 F. 2d 281 (Ct. App. D. C.). *Massachusetts Bonding & Ins. Co.* v. *Commissioner of Ins.* 329 Mass. 265, 272. Rates are not adequate, fair and reasonable if a large aggregate loss for the preceding year and a probable greater loss for the year in issue are ignored and the preceding year's rates simply renewed. *American Employers' Ins. Co.* v. *Commissioner of Ins.* 335 Mass. 748, 756. *Aetna Cas. & Sur. Co.* v. *Commissioner of Ins.* 358 Mass. 272, 278–281. *Travelers Indem. Co.* v. *Commissioner of Ins.* 358 Mass. 387, 389.

We are asked by the petitioners to find that the renewal of 1969 rates for 1970 is unlawful under these principles, since the premium dollars available in 1970 will not be sufficient even to pay the losses and expenses which will be incurred. As to property damage, this claim would be a strong one if the Commissioner admitted, as he did in the case reviewing the rates for 1971, that the aggregate underwriting loss for 1969 on this coverage was over $10,000,000 and that the same rates would produce an underwriting loss of over $20,500,000 for 1971. But those admissions were made "for the purposes of the instant case only." *Aetna Cas. & Sur. Co.* v. *Commissioner of Ins.* 358 Mass. 272, 274–275. There is no such admission or finding in the present case, and we are not prepared to make our own finding on the point.

3. Under the statutes each type of automobile insurance coverage must be considered and treated separately from all others. *Aetna Cas. & Sur. Co.* v. *Commissioner of Ins.* 358 Mass. 272, 280. A rate which is otherwise inadequate cannot be justified on the ground that some or all companies make an offsetting profit on another coverage. We think this principle applies to investment income. In this case the Commissioner requested and the petitioners submitted data concerning investment income. He adopted the method proposed by the petitioners for determining the amount of earnings to be reflected in the rate, but "with the proviso that all of the unearned premiums and loss reserves for all of the lines of insurance subject to rate regulation under . . . G. L. c. 175, § 113B, are to be included in the formula." In so far as the proviso means that income from premiums and reserves related to one coverage can be taken into account in fixing rates for another coverage, it is contrary to law.

4. An examination of the Commissioner's decision suggests that he may have misconceived his function. As to property damage rates, he devotes four and one-half pages to criticism of the rate proposal of the petitioners and concludes by disapproving it; he then adds five sentences to

"fix and establish" the 1969 rates as the 1970 rates.[1] The proposal for medical payments is discussed and disapproved in one and one-half pages; three sentences then explain the continuation of 1969 rates for 1970.[2] The petitioners suggest that the Commissioner apparently took the position that he had no affirmative duty to fix and establish adequate rates but could merely disapprove the rates proposed by the petitioners. The Commissioner, however, now argues that he has complied with G. L. c. 175, § 113B.

It is our duty to see that a rate meeting the statutory standard is promulgated by the Commissioner. *American Employers' Ins. Co.* v. *Commissioner of Ins.* 335 Mass. 748, 750. We are not "authorized to substitute our judgment as to the reasonableness or adequacy of the premium charges for that of the commissioner." Our inquiry "'embraces questions of law, and, on the factual side, a reëxamination of the proceedings already concluded before the commissioner in order to determine whether his findings had reasonable support in the evidence.' *Insurance Co. of North America* v. *Commissioner of Insurance,* 327 Mass. 745, 753." *Massa-*

---

[1] "It is my opinion that the rates in effect for the year 1969 meet the standards of the pertinent statute. When they were filed and allowed to be used they were neither confiscatory nor extortionate to the insurers and the general public which use and pay them. These rates were based upon their producing a 60.2% loss ratio. The best evidence is that rates based upon that loss ratio can be reasonably expected to produce the premium necessary to cover all of the allocations, including profit, budgeted therein. Now, therefore, to the extent that it is necessary that I promulgate automobile property damage liability insurance rates for the calendar year 1970, I hereby fix and establish the rates, rating plans, territories and classifications as were in effect for the calendar year 1969 as the rates to be charged by all companies authorized to write compulsory automobile bodily injury liability insurance and required to offer the additional automobile insurance to the limits of liability set forth in . . . c. 175, § 113C, to their insureds who have purchased compulsory automobile liability insurance."

[2] "Pursuant to . . . c. 175, § 113B, I hereby fix and establish as the Automobile Medical Payments rates applicable to such coverage referred to in . . . c. 175, § 113C, and further defined herein, the rates in effect for such insurance in 1969. Our rates are based upon statistical information supplied by the Mass. Bureau indicating increasing premium volume because of the number of motorists now availing themselves of the insurance, and the decreasing number of claims and claim frequency which in my opinion will overcome the alleged present rate deficiency notwithstanding the increase in the average medical payment claim cost. Further, we believe that the Fraudulent Claims Board in the Division of Insurance will make a significant contribution in the claim experience for this coverage."

*chusetts Bonding & Ins. Co.* v. *Commissioner of Ins.* 329 Mass. 265, 273.

The Commissioner's findings are not adequate to enable us to determine (a) whether his order and conclusions are warranted by appropriate subsidiary findings, and (b) whether such subsidiary findings are supported by substantial evidence. *Westborough* v. *Department of Pub. Util.* 358 Mass. 716, 717–718, and cases cited. He should find expressly those subsidiary facts upon which he relies. He should not leave counsel and the courts without the guidance of proper findings (as opposed to mere recitations of evidence or arguments) to determine from a voluminous record (1,000 pages of transcript and more than sixty exhibits) whether his conclusions can be sustained on the evidence. See *Herson's Case,* 341 Mass. 402, 407–408.

5. The case is to be remanded to the Commissioner for appropriate subsidiary findings and conclusions based on those findings, relating to his determination and approval of 1970 rates for automobile property damage liability insurance and automobile medical payments insurance as provided in G. L. c. 175, § 113C, including the manner in which the various elements which he considers and incorporates in his determination are combined so as to arrive at the rates, and for such further proceedings, which may include further hearings, as may be consistent with this opinion.

*So ordered.*